# EXHIBIT A

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
JOHN T. JASNOCH (CA. BAR NO. 281605)
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
jjasnoch@scott-scott.com

*Counsel for Plaintiff*

[Additional counsel on signature page.]

FILED
SAN MATEO COUNTY
MAY 25 2017
Clerk of the Superior Court

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

| | |
|---|---|
| KYLE OLBERDING, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AVINGER, INC.; JEFFREY M. SOINSKI; JOHN B. SIMPSON; MATTHEW B. FERGUSON; DONALD A. LUCAS; JAMES B. MCELWEE; JAMES G. CULLEN; CANACCORD GENUITY INC.; COWEN AND COMPANY LLC; OPPENHEIMER & CO. INC.; BTIG, LLC; and STEPHENS INC.,<br><br>Defendants. | Case No.  17CIV02307<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933**<br><br>JURY TRIAL DEMANDED |

17-CIV-02307
CMP
Complaint
523052

CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

Plaintiff Kyle Olberding ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings, analyst and media reports, and other commentary analysis. Plaintiff's investigation into the matters alleged herein is continuing and many relevant facts are known only to, or are exclusively within the custody and control of, the Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for formal discovery.

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff brings this action under §§11 and 15 of the Securities Act of 1933 (the "1933 Act") against (1) Avinger Inc. ("Avinger" or the "Company"); (2) certain of the Company's senior executives and directors who signed the Registration Statement dated January 29, 2015 on Form S-1/A filed in connection with the Company's Initial Public Offering (the "Offering"), and (3) each of the investment banks that acted as underwriters for the Offering (collectively, "Defendants"). Plaintiff alleges that the Registration Statement (and Prospectus incorporated therein) contained materially incorrect or misleading statements and/or omitted material information that was required by law to be disclosed. Defendants are each strictly liable for such misstatements and omissions therefrom (subject only, in the case of the Individual and Underwriter Defendants, to their ability to establish a "due diligence" affirmative defense), and are so liable in their capacities as signers of the Registration Statement and/or as an issuer, statutory seller, offeror, and/or underwriter of the shares sold pursuant to the Offering. For all of the claims stated herein, ***Plaintiff expressly disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct.***

2. Avinger was founded in 2007 and is headquartered in Redwood City, California.

3. Avinger is a commercial-stage medical device company that designs, manufactures, and sells image-guided, catheter-based systems that are used by physicians to treat patients with peripheral

arterial disease, or PAD. Patients with PAD have a build-up of plaque in the arteries that supply blood to the arms and legs. The Company develops a lumivascular platform that integrates optical coherence tomography visualization with interventional catheters to provide real-time intravascular imaging during the treatment portion of PAD procedures. The Company sells and markets its products to interventional cardiologists, vascular surgeons, and interventional radiologists.

4. The Company's lumivascular products include Pantheris, an image-guided atherectomy device that allows physicians to remove arterial plaque in PAD patients.

5. On January 30, 2015, Avinger conducted an IPO in which $65 million worth of shares were offered to the public. Five million shares were offered at a price of $13.00 per share. Of the $65 million, Avinger received approximately $60.45 million.

6. However, in violation of the federal securities laws, Defendants misleadingly failed to disclose that Avinger's Pantheris device had serious reliability and usability issues that would negatively impact sales.

7. Unbeknownst to investors, the Registration Statement's representations were materially inaccurate, misleading, and/or incomplete because they failed to disclose, *inter alia*, that the Pantheris device had reliability and usability problems that would prevent it from becoming a widely-used device, at least until further iterations of the device were successfully manufactured. Accordingly, the price of the Company's shares was artificially and materially inflated at the time of the Offering.

8. Unfortunately for investors who purchased the Company's shares pursuant or traceable to the Offering, the truth concerning the nature and extent of the problems facing the Company did not begin to emerge until after the Offering.

9. On July 12, 2016, the Company announced second quarter revenue of $4.7 million, which was well below analysts' estimates of $5.7 million, and lowered its sales guidance for 2016 from $25 million-$30 million to $19 million-$23 million, due in part to lower than anticipated sales of the Pantheris device.

10. In response to these disclosures, Avinger's stock plunged nearly 40%, from $11.43 to $6.89 per share, a drop of 47% from the IPO price.

CLASS ACTION COMPLAINT

11. By this action, Plaintiff, on behalf of himself and the other Class members who also acquired the Company's shares pursuant or traceable to the Offering, now seek to obtain a recovery for the damages they have suffered as a result of Defendants' violations of the Securities Act, as alleged herein.

12. The claims asserted herein are purely strict liability and negligence claims. Plaintiff expressly eschews any allegation sounding in fraud.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to the California Constitution, Article VI, §10 and Section 22 of the federal Securities Act, 15 U.S.C. §77v. This action is not removable. The claims alleged herein arise under §§11, and 15 of the Securities Act. *See* 15 U.S.C. §§77k and 77o. Section 22 of the Securities Act, 15 U.S.C. §77v(a), expressly states that "[e]xcept as provided in section 77p(c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." Section 77p(c) refers to "covered class action[s] brought in any State court involving a covered security, as set forth in subsection (b)," and subsection (b) of 77p in turn includes within its scope only covered class actions "based upon the statutory or common law of any State or subdivision thereof." *See* 15 U.S.C. §77p. This is an action asserting only federal law claims. Thus, this action is not removable to federal court.

14. This Court has personal jurisdiction over each Defendant named herein because each conducted business in, resided in, and/or was a citizen of California at the time of the Offering.

15. Venue is proper because the Company is headquartered in this county.

## PARTIES

### A. Plaintiff

16. Plaintiff Kyle Olberding purchased shares of the Company's common stock that were issued pursuant and traceable to the Registration Statement and the Offering and was damaged thereby.

### B. Defendants

17. Defendant Avinger is a commercial-stage medical device company that designs, manufactures, and sells image-guided, catheter-based systems that are used by physicians to treat

3
CLASS ACTION COMPLAINT

patients with PAD. Avinger is a Delaware corporation with its principal executive office in Redwood City, California. Its shares are listed and trade on the NASDAQ Stock Market under the ticker symbol "AVGR."

18. At the time of the IPO, Defendant Jeffrey M. Soinski was the President and Chief Executive Officer of Avinger and also a director. Soinski participated in preparing the Prospectus and Registration Statement, which Defendant signed.

19. At the time of the IPO, Defendant Matthew B. Ferguson was the Chief Financial Officer and Chief Business Officer of Avinger. Ferguson participated in preparing the Prospectus and Registration Statement, which Defendant signed.

20. At the time of the IPO, Defendant Donald A. Lucas was a director of Avinger. Lucas participated in preparing the Prospectus and Registration Statement, which Defendant signed.

21. At the time of the IPO, Defendant John B. Simpson, Ph.D., M.D. was the Executive Chairman of the Board of Directors of Avinger. Simpson participated in preparing the Prospectus and Registration Statement, which Defendant signed.

22. At the time of the IPO, Defendant James B. McElwee was a director of Avinger. McElwee participated in preparing the Prospectus and Registration Statement, which Defendant signed.

23. At the time of the IPO, Defendant James G. Cullen was a director of Avinger. Cullen participated in preparing the Prospectus and Registration Statement, which Defendant signed.

24. Defendants Soinski, Ferguson, Lucas, Simpson, McElwee, and Cullen are collectively referred to herein as the "Individual Defendants."

25. The following Underwriter Defendants were also instrumental in soliciting and making the stock offered in the Offering available to the investing public:

| Name | Number of shares |
| --- | --- |
| Canaccord Genuity Inc. | 1,750,000 |
| Cowen and Company, LLC | 1,750,000 |
| Oppenheimer & Co. Inc. | 500,000 |
| BTIG, LLC | 500,000 |
| Stephens Inc. | 500,000 |

4

CLASS ACTION COMPLAINT

26. Defendant Canaccord Genuity Inc. ("Canaccord") was an underwriter of the Company's Offering, served as a financial advisor for and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus. Canaccord acted as lead joint bookrunner in the Offering. Canaccord's participation in the solicitation of the Offering was motivated by its financial interests. Defendant Canaccord conducts business in the state of California.

27. Defendant Cowen and Company, LLC ("Cowen") was an underwriter of the Company's Offering and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus. Cowen acted as lead joint bookrunner in the Offering. Cowen's participation in the solicitation of the Offering was motivated by its financial interests. Defendant Cowen conducts business in the state of California.

28. Defendant Oppenheimer & Co. Inc. ("Oppenheimer") was an underwriter of the Company's Offering and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus. Oppenheimer's participation in the solicitation of the Offering was motivated by its financial interests. Defendant Oppenheimer conducts business in the state of California.

29. Defendant BTIG, LLC ("BTIG") was an underwriter of the Company's Offering and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus. BTIG's participation in the solicitation of the Offering was motivated by its financial interests. Defendant BTIG conducts business in the state of California.

30. Defendant Stephens Inc. ("Stephens") was an underwriter of the Company's Offering and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus. Stephens' participation in the solicitation of the Offering was motivated by its financial interests. Defendant Stephens conducts business in the state of California.

31. Defendants Canaccord, Cowen, Oppenheimer, BTIG, and Stephens are referred to collectively as the "Underwriter Defendants."

32. Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Offering's Registration Statement and Prospectus. The Underwriter

Defendants' failure to conduct adequate due diligence investigations was a substantial factor leading to the harm complained of herein.

33. The Underwriter Defendants are primarily investment banking houses which specialize, *inter alia*, in underwriting public offerings of securities. As the underwriters of the Offering, the Underwriter Defendants earned lucrative underwriting fees as a result of their participation in the Offering.

34. In addition, the Underwriter Defendants met with potential investors and presented highly favorable but materially incorrect and/or materially misleading information about the Company, its business, products, plans, and financial prospects, and/or omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

35. Representatives of the Underwriter Defendants also assisted the Company and the Individual Defendants in planning the Offering. They also purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of the Company, an undertaking known as a "due diligence" investigation. During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning the Company's business, financial condition, products, plans, and prospects.

36. In addition to having access to internal corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to the Company's lawyers, management, directors, and top executives to determine: (i) the strategy to best accomplish the Offering; (ii) the terms of the Offering, including the price at which the Company's common stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about the Company would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and the Company's management and top executives, at a minimum, the Underwriter Defendants should have known of the Company's

undisclosed existing problems and plans, and the material misstatements and omissions contained in the Registration Statement as detailed herein.

37. The Underwriter Defendants caused the Registration Statement to be filed with the SEC and to be declared effective in connection with offers and sales of the Company's shares pursuant and/or traceable to the Offering and relevant offering materials, including to Plaintiff and the Class.

## SUBSTANTIVE ALLEGATIONS

### I. THE OFFERING AND THE COMPANY'S MATERIALLY MISLEADING AND INCOMPLETE REGISTRATION STATEMENT AND PROSPECTUS

38. The Registration Statement and Prospectus used to effectuate Avingers's Offering was false and misleading in that it misled investors with respect to potential sales of its Pantheris device. This information was highly material to investors because the Company was "largely dependent on the successful development and commercialization of Pantheris," according to its Offering documents.

39. Given the Individual Defendants' interest is ensuring a favorably high offering price, it is hardly surprising that the Company's Registration Statement and Prospectus incorporated therein presented a highly positive picture of the Company's business, performance, prospects and products, while omitting crucial realities.

40. The Registration Statement made the following representations concerning its business and the Pantheris device:

> We believe that Pantheris, if cleared by FDA, will significantly enhance our market opportunity within PAD and can expand the overall addressable market for PAD endovascular procedures.

41. The Registration Statement made the following representations concerning its business and the Pantheris device:

> Based on the currently available data, we believe that we are on track to meet or exceed the requirements necessary to meet the [Pantheris VISION] trial's primary efficacy endpoint.

42. The Registration Statement made the following representations concerning its business and the PAD market:

> According to an article published in The Lancet, the global prevalence of PAD was estimated at 202 million people in 2010. The prevalence of PAD in the United States alone was estimated at 18 million people in 2010 and

7

CLASS ACTION COMPLAINT

is projected to grow to 21 million people by 2020 according to the Sage Group. Despite its prevalence, PAD is underdiagnosed and undertreated relative to many other serious vascular conditions, including coronary artery disease, or CAD, in part because many PAD patients are asymptomatic or dismiss their symptoms as normal signs of aging. Despite the relative undertreatment of PAD, Millennium Research Group estimates that over 570,000 catheter-based PAD procedures in the pelvis and legs were performed in the United States in 2013, which corresponded to a $1.0 billion market. Millennium Research Group also estimates that the number of catheter-based PAD procedures will grow to 700,000 in 2017, representing a $1.2 billion market in the United States. Higher diagnosis and intervention rates resulting from greater physician and patient awareness of PAD, as well as higher prevalence, may significantly expand the market opportunity for PAD treatments, according to Millennium Research Group.

43. The Registration Statement made the following representations concerning its business and the Pantheris device:

> Pantheris, if cleared by FDA, is designed to enable physicians to successfully perform atherectomy procedures and remove plaque blockages in PAD patients using fewer balloons and stents. By avoiding the use of stents in atherectomy procedures, we believe that Pantheris better preserves future treatment options.

44. The Registration Statement made the following representations concerning its business and the Pantheris device:

> We expect to grow our sales force in preparation for the commercial launch of Pantheris in order to increase the base of customers using our lumivascular platform products.

45. The foregoing statements were false and misleading because, unbeknownst to investors or the members of the Class, at the time of the Offering, the Pantheris device had serious reliability and usability problems, beyond the fact that it had not yet been approved by the FDA.

46. Furthermore, because this case involves a Registration Statement, Defendants also had an independent, affirmative duty to provide adequate disclosures about adverse conditions, risks, and uncertainties. *See* Item 303 of SEC Reg. S-K, 17 C.F.R. §229.303(a)(3)(ii). Thus, Defendants had an affirmative duty to ensure that the Registration Statement and the materials incorporated therein disclosed material trends and uncertainties that they knew, or should have reasonably expected, would have a materially adverse impact on Avinger's business. Defendants failed to fulfill this obligation as well.

CLASS ACTION COMPLAINT

## II. THE TRUTH BEGINS TO EMERGE

47. Unfortunately for investors, it was not until approximately July 12, 2016, after the Offering, that investors first began to learn the truth concerning Avinger that was not accurately disclosed in the Offering materials. On that date, in advance of its quarterly earnings release, the Company announced second quarter 2016 revenue of $4.7 million, which was well below analysts' estimates of $5.7 million. The company also lowered sales guidance for 2016 from $25 million-$30 million down to just $19 million-$23 million.

48. The misses were tied to a poor rollout of Pantheris. In particular, Pantheris' original imaging fiber presented serious visualization challenges.

49. The Company held a conference call on July 12, 2016 to discuss the revised guidance. On that call, Defendant Soinski revealed that Avinger had been experiencing continued problems with the robustness of the Pantheris device. Defendant Simpson made similar revelations, adding that the issue was "primarily image fiber robustness," and stating that "if you pull too hard on the catheter to open it, the fiber could crack and when the fiber cracked the images would degrade." Simpson also stated the company had experienced safety problems with the balloons in the device being fragile and leaking.

50. In response to these disclosures, the Company's shares fell sharply, closing down nearly 40%, from $11.43 to $6.89 per share.

51. As of the date of the complaint, Avinger currently trades approximately 97% below its Offering price.

## III. PLAINTIFF'S CLASS ACTION ALLEGATIONS

52. Plaintiff brings this action as a class action on behalf of a Class consisting of all those who purchased the Company's common stock pursuant or traceable to the Company's Offering and Registration Statement and who were damaged thereby (the "Class"). Excluded from the Class are Defendants; the officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

53. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the proposed Class. The members of the proposed Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

54. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct.

55. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

56. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the federal securities laws were violated by Defendants' acts as alleged herein;

    b. whether the Prospectus and Registration Statement contained materially false and misleading statements and omissions; and

    c. to what extent Plaintiff and members of the Class have sustained damages and the proper measure of damages.

57. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CLAIM
### Violations of §11 of the Securities Act of 1933
### Against All Defendants

58. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59. This Claim is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against each of the Defendants.

60. The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

61. The Company is the issuer of the securities purchased by Plaintiff and the Class. As such, the Company is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

62. The Individual Defendants each signed the Registration Statement. As such, each is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense. The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement, and to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the document contained all facts required to be stated therein. In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material fact necessary to make the statements made therein not misleading. Accordingly, the Individual Defendants are liable to Plaintiff and the Class.

63. The Underwriter Defendants each served as underwriters in connection with the Offering. As such, each is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate, unless they are able

to carry their burden of establishing an affirmative "due diligence" defense. These Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. They had a duty to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the documents contained all facts required to be stated therein. In the exercise of reasonable care, the Underwriter Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material facts necessary to make the statements made therein not misleading. Accordingly, each of the Underwriter Defendants is liable to Plaintiff and the Class.

64. By reasons of the conduct herein alleged, each Defendant violated §11 of the Securities Act.

65. Plaintiff acquired the Company's common stock pursuant or traceable to the Registration Statement, and without knowledge of the untruths and/or omissions alleged herein. Plaintiff sustained damages, and the price of the Company's common stock declined substantially due to material misstatements in the Registration Statement.

66. This claim was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

67. By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under §11 as measured by the provisions of §11(e) from the Defendants and each of them, jointly and severally.

**SECOND CLAIM**
**For Violation of §15 of the Securities Act of 1933**
**Against the Individual Defendants**

68. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

69. This claim is brought pursuant to §15 of the 1933 Act, 15 U.S.C. §77o, on behalf of the Class, against the Individual Defendants.

12
CLASS ACTION COMPLAINT

70. The Individual Defendants were controlling persons of the Company within the meaning of §15 of the 1933 Act. By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants invest in, individually and collectively, had the power to influence, and exercised the same, over the Company to cause it to engage in the conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to §15 of the 1933 Act.

71. By reason of such wrongful conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act. As a direct and proximate result of the wrongful conduct, Class members suffered damages in connection with their purchases of the Company's shares.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. Declaring this action to be a proper class action and certifying Plaintiff as Class representative;

B. Awarding Plaintiff and the other members of the Class compensatory damages;

D. Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

E. Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 25, 2017

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

*/s/ John T. Jasnoch*

John T. Jasnoch (Bar No. 281605)
707 Broadway, Suite 1000
San Diego, CA 92101
Tel.: (619) 233-4565
Fax: (619) 233-0508
jjasnoch@scott-scott.com

13

CLASS ACTION COMPLAINT

– and –

Tom Laughlin (Pro *Hac Vice* forthcoming)
Rhiana Swartz (Pro *Hac Vice* forthcoming)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY  10169
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email:  tlaughlin@scott-scott.com
        rswartz@scott-scott.com

*Counsel for Plaintiff*

14

CLASS ACTION COMPLAINT

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
John T. Jasnoch
Scott+Scott, Attorneys at Law, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
TELEPHONE NO.: 619-233-4565    FAX NO.: 619-233-0508
ATTORNEY FOR *(Name):* Kyle Olberding

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Southern Branch: Hall of Justice and Records

CASE NAME:
Kyle Olberding v. Avinger, Inc., et al

**FOR COURT USE ONLY**
FILED
SAN MATEO COUNTY
MAY 25 2017
Clerk of the Superior Court
By _____ DEPUTY CLERK

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited  [ ] Limited (Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 17CIV02307  JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[✓] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* 2 (Violations of 15 U.S.C. §§77k and 77o)
5. This case [✓] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 25, 2017
John T. Jasnoch
(TYPE OR PRINT NAME)                    ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

17-CIV-02307
CCCS
Civil Case Cover Sheet
523053

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov